## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EMPIRE FIRE & MARINE INS. CO.,
     Plaintiff,

v.                                                                NO. 3:07cv1325 (SRU)

EDWARD LANG, ET AL.,
     Defendants.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Empire Fire & Marine Insurance Company ("Empire") filed this action seeking a

declaratory judgment that it has no duty to defend and indemnify defendants Edward Lang

("Edward") and Samantha Lang ("Samantha")  in a personal injury action filed against them in

Connecticut Superior Court by defendant Stacey Prior ("Prior").  (Amended Complaint ¶¶ 34-

38.)  The underlying lawsuit alleges that Samantha was under the influence of alcohol when her

car collided with Prior's car.  It further alleges that Edward Lang had rented the car Samantha

was operating and had listed her as an additional authorized driver on the rental agreement.

Empire has moved for summary judgment on the issue of its duty to defend and

indemnify either of the Langs under the Supplemental Liability Protection Policy (the "Policy")

Edward Lang purchased when he entered into the car rental agreement (the "Rental

Agreement").[1]  Empire argues that coverage is barred as a matter of law by two Policy terms: (1)

the Policy's "under the influence" provision, and (2) the Policy's "use" provision, read in

conjunction with the "use" provision of the Rental Agreement.

---

[1]  The Amended Complaint also seeks a declaration that the Policy does not provide
coverage for some of the damages Prior seeks in her lawsuit, including double/treble damages,
interest and costs.  ¶ 37.  The issue of what damages may be awarded under the Policy was not
briefed on Summary Judgment.  It is not necessary for me to decide that issue.

The Langs and Prior opposed Empire's motion, and cross-moved for summary judgment at oral argument on Empire's motion. Prior argues that Connecticut's public policy, as evidenced by legislation and case law, requires that I void the above-mentioned provisions that exclude coverage. Prior also argues that the exclusions were "contained in an unenforceable contract of adhesion." (Prior Opp., doc. # 34.) Although Prior does not explicitly argue what legal consequence would flow from a determination that the insurance agreement was contained in a contract of adhesion, I surmise from her answer and briefing that her "contract of adhesion" argument forms the basis of her affirmative defense in estoppel. Her legal theory seems to be that Empire should be estopped from denying coverage on the basis of exclusions contained in a contract of adhesion.[2]

---

[2] Prior and the Langs rely extensively on *Philadelphia Indem. Ins. Co. v. Barerra*, 200 Ariz. 9, 18 (2001), in which the Arizona Supreme Court held that a DUI exclusion could not be enforced against an insured. That case is distinguishable: the defendants in *Barerra* filed a counterclaim alleging breach and bad faith; neither Prior nor the Langs brought a counterclaim.

Moreover, Arizona jurisprudence recognizes the doctrine of reasonable expectations. The decision in *Barerra* depended on that doctrine. 200 Ariz. at 12. According to the Arizona Supreme Court, the "doctrine of reasonable expectations relieves a party from 'certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them.'" *Id.* at 14 (quoting *Darner Motor Sales, Inc. v. Univ. Underwriters Ins. Co.*, 140 Ariz. 383, 394 (1984)).

I do not understand Prior and the Langs to urge me to apply the doctrine of reasonable expectations in this case. To the extent they do urge me to apply that doctrine, it is available in Connecticut only in a limited fashion, and is not appropriate here. Connecticut has adopted the doctrine of reasonable expectations only as an aspect of the interpretation of contract terms and ambiguities. *See Agosto v. Aetna Cas. & Sur. Co.*, 239 Conn. 549, 551 (1996) (referring to doctrine to support interpretation of an ambiguous term in insurance policy); *Hansen v. Ohio Cas. Ins. Co.*, 239 Conn. 537, 542 (1996) (construing same policy language as *Agosto* and finding ambiguity). *See also Progressive Cas. Ins. Co. v. Marnel*, 587 F. Supp. 622, 623 (D. Conn. 1983) ("Connecticut law would appear to embrace this doctrine, if at all, only as an aspect of the fundamental principle that ambiguities are to be construed against the drafters of insurance policies, as well as other contracts."). Connecticut courts have not embraced the doctrine of reasonable expectations as a basis for reforming insurance contracts.

The Langs join Prior's argument regarding public policy. Additionally, they argue that Edward Lang falls outside the terms of both exclusions, and that Empire has a duty to defend him even if a declaratory judgment enters against Samantha Lang.

After oral argument on the motions, Empire submitted a motion to strike evidentiary submissions by the Langs and Prior. (Doc. # 63.) That motion is denied as moot.

For the reasons described below, I grant the plaintiff's motion for summary judgment and deny the defendants' motions for summary judgment.

I.     **Background**

Most of the facts material to the case are not disputed. (Empire Local R. 56(a)(1) Stmt., doc. # 33; Prior Opp., doc. # 34; Lang Opp., doc. # 43.) On March 12, 2005, Edward Lang signed a rental agreement with Camrac, Inc. d/b/a/ Enterprise 1-800 Rent-A-Car. (Empire Local R. 56(a)(1) Stmt. ¶¶ 1-2.) He listed his daughter, Samantha Lang, as an additional authorized driver. (*Id.* ¶ 4.) The rental contract reflects that Edward purchased Supplemental Liability Protection ("SLP"), underwritten by Empire, for himself and Samantha. (*Id.* ¶¶ 3-4.) On March 24, 2005, Samantha was driving the rental car under the influence of alcohol when she struck Prior's car, injuring Prior. (*Id.* ¶¶ 9-10.) There is no evidence in the record that Edward Lang had knowledge of Samantha's condition at any time on the day in question. Samantha was arrested that same day for driving under the influence. (*Id.* ¶ 11.) She pleaded guilty and was convicted on February 2, 2007. (*Id.* ¶¶ 12-14.) Prior sued Edward and Samantha Lang and Camrac in Connecticut Superior Court in a complaint[3] dated February 1, 2007, alleging personal

_____

[3] Prior initially sued Camrac in Superior Court as the owner of the vehicle under Conn. Gen. Stat. § 14-154a (imposing liability on owner for damage caused by rented or leased motor vehicle). She dropped those claims from her amended state court complaint, dated July 16, 2007.

injuries and claiming compensatory and punitive damages, under claims of negligence, common law and statutory recklessness, negligent entrustment, and the family car doctrine.  (*Id.* ¶¶ 15-22.)

This insurance coverage dispute turns principally on the terms of the Rental Agreement and the Policy.  The second page of the Rental Agreement is labeled "Additional Terms and Conditions."  (*Id.* ¶ 5 & Ex. A.)  Describing the Supplemental Liability Protection, the Rental Agreement states:

> For all exclusions, see the SLP policy issued by Empire Fire and Marine Insurance Company.  Here are a few key exclusions:  (a) Loss arising out of an accident which occurs while Renter or Additional Authorized Driver is under the influence of alcohol or drugs . . . .  (j) Loss arising out of the use of Vehicle when such use is otherwise in violation of the terms and conditions of the Rental Agreement.

(*Id.* Ex. A; Prior Opp., Ex. E at 2.)

The Policy provides the following exclusions (the "impairment" and "use" exclusions):

> In addition to the exclusions contained in the "underlying insurance," this insurance does not apply to the following:
> 1.  Loss arising out of an "accident" which occurs while the "insured" is under the influence of alcohol or drugs, or other substances unless prescribed by a physician.
> 2.  Loss arising out of the use of a "rental vehicle" when such use is in violation of the terms and conditions of the "rental agreement."

(Empire Local R. 56(a)(1) Stmt., Ex. I.)  The Rental Agreement further provides that the car "shall not be used . . . in any illegal or reckless manner . . . [and] shall not be driven by any person impaired by the use of alcohol . . . ."  (*Id.* Ex. A at 5 ¶ 3.)

On December 5, 2008, I held a hearing on the pending motions.  I invited the parties to

---

Camrac is no longer a party to the state court suit.
        The amended state court complaint also removed from the count alleging negligence the factual allegation that Samantha was under the influence at the time of the accident.  The allegation is included in other counts, however, and is not disputed by the parties.

submit additional briefing, especially regarding possible certification of a question to the

Connecticut Supreme Court.  On January 16, 2009, Empire submitted a motion to strike

supplemental documents submitted by Prior (docs. ## 58-60), arguing that the submissions were

beyond the scope and time period I had allowed.  I have determined that I need not consider

evidence submitted after the hearing.  Additionally, I have determined that certification is

unnecessary because decisions of the Connecticut appellate courts provide sufficient guidance for

me to rule on the motions for summary judgment.

## II.     Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion

for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the

light most favorable to the nonmoving party and must resolve all ambiguities and draw all

reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523

(2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of

the nonmoving party").  When a motion for summary judgment is properly supported by

documentary and testimonial evidence, however, the nonmoving party may not rest upon the

mere allegations or denials of his pleadings, but rather must present significant probative

-5-

evidence to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48.  To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at 248.

When parties make cross motions for summary judgment, the standard is the same as that for individual motions.  *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).  The district court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting *Schwabenbauer v. Bd. of Educ. of Olean*, 667 F.2d 305 (2d Cir. 1981)).

## III.    Discussion

Under Connecticut law, the rules of contract construction govern the interpretation of an insurance policy.  *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990); *see also*

*Heyman Assocs. No. 1 v. Ins. Co. of the State of Pa.*, 231 Conn. 756, 769-70 (1995); *Simes v. N. Am. Co. for Life & Health Ins.*, 175 Conn. 77, 84 (1978).  "The determinative question is the intent of the parties, that is, what coverage the plaintiff expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy."  *Heyman Assocs.*, 231 Conn. at 769-70 (citations and quotations removed).

When the terms of an insurance policy are clear and unambiguous, they must be accorded their ordinary meaning.  *W. World Ins. Co.*, 922 F.2d at 121; *see also Heyman Assocs.*, 231 Conn. at 769-70.  "[T]he meaning of particular language found in insurance policies should be examined 'in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.'"  *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986) (quoting *Champion Int'l Corp. v. Cont'l Cas. Co.*, 546 F.2d 502, 505 (2d Cir. 1976)).

Connecticut law requires that, "when the words of an insurance contract are, without violence, susceptible of two equally responsible interpretations," the court should construe the words to provide coverage for the loss.  *See Heyman Assocs.*, 231 Conn. at 769-70 (citations and quotations removed).  Ambiguous terms are construed in favor of insurance coverage "because it is the insurance company that has drafted the terms of the policy."  *Kelly v. Figueiredo*, 223 Conn. 31, 36-37 (1992); *see also Heyman Assocs.*, 231 Conn. at 769-70.  Indeed, the canon of contra proferentem "is more rigorously applied in the context of insurance contracts rather than in other contracts."  *Israel v. State Farm Mut. Auto. Ins. Co.*, 259 Conn. 503, 509 (2002).  When "the language is plain," no construction is necessary.  *Heyman Assocs.*, 231 Conn. at 769-70 (citations and quotations removed).  "Where recovery under a policy turns on the interpretation

of an exclusionary clause, the insurer bears the burden of demonstrating that the loss is excluded under the express terms of the policy." *W. World Ins. Co.*, 922 F.2d at 121.

An insurer has a duty to defend a claim against its insured, unless it can establish "as a matter of law, that there is no possible factual or legal basis on which [the insurer] might eventually be obligated to indemnify [the] insured under any policy provision." *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 473 n.28 (2005) (quoting 1 B. Ostrager & T. Newman, Insurance Coverage Disputes 204 § 5.02 (12th ed. 2004)).  There is no duty to defend a case for which, as a matter of law, there is no coverage.  *Id.*  The insurer's duty to defend is determined by reference to the allegations contained in the underlying complaint.  *Id.* at 470.

>    A.    The Policy Does Not Cover Losses Claimed in the Superior Court Lawsuit

At least with respect to Edward Lang, the "under the influence" exclusion of the Policy is sufficiently ambiguous that it fails to exclude coverage for loss arising out of the underlying accident.  The "use" exclusion of the Policy, however, clearly and unambiguously bars coverage for losses arising out of the use of the rental vehicle while Samantha was impaired from the use of alcohol, which obviously includes all loss arising out of the accident at issue in the Superior Court lawsuit.  Accordingly, Empire has neither a duty to defend nor a duty to indemnify the Langs in the Superior Court lawsuit brought against them by Prior.

The Policy states that insurance does not apply to "[l]oss arising out of an 'accident' which occurs while the 'insured' is under the influence of alcohol . . . ."  If Samantha were the only insured under the Policy, coverage would be barred by the "under the influence" exclusion. She would then be "the" insured and, because she was under the influence of alcohol when the accident occurred, all loss arising out of that accident would fall within the exclusion from

coverage. Samantha was not the only insured under the Policy, however; Edward was also an insured – indeed, he could be called the primary insured. Because there is no evidence that Edward was under the influence of alcohol at any pertinent time, and because Empire did not draft the language of the exclusion with sufficient clarity,[4] the exclusion will be read against Empire. Although not the plainest reading, the "under the influence" exclusion can be read in a way that makes it inapplicable here: because Edward was not under the influence of alcohol when the accident occurred, the exclusion does not bar coverage of Edward for loss arising out of the accident between Samantha and Prior. Thus, I conclude that the "under the influence" exclusion does not bar coverage under the circumstances of this case because it does not preclude coverage for a loss arising when Edward, the insured, was not under the influence. For that reason, it is unnecessary for me to consider whether the exclusion violates the public policy of Connecticut.

The "use" exclusion, however, does not fall prey to the same drafting problems. The "use" exclusion of the Policy excludes coverage for "[l]oss arising out of the use of a 'rental vehicle' when such use is in violation of the terms and conditions of the 'rental agreement.'" The Rental Agreement provides that the rental vehicle "shall not be used . . . in any illegal or reckless manner . . . [and] shall not be driven by any person impaired by the use of alcohol . . . ." The state court complaint alleges and the parties agree that Samantha Lang was driving under the influence of alcohol when the accident occurred. Such use of the vehicle while impaired by alcohol was prohibited by the express terms of the Rental Agreement. Thus, the "use" exclusion

---

[4] The exclusion refers to "the" insured, not to "an" insured, "any" insured, "the insured driver," or another formulation that would more expressly exclude coverage for all insureds when any insured operates the rental car under the influence of alcohol.

of the Policy applies and all losses arising from the use of the rental vehicle while Samantha was impaired by the use of alcohol are excluded from coverage under the Policy.

The effect of the "use" exclusion deprives both Samantha and Edward of a right to defense and indemnification from Empire. The exclusion is tied to the source of the loss – here the accident that occurred while Samantha was driving impaired – not to the identity of the insured seeking coverage. Thus, it does not matter that Edward was not using the vehicle and was not impaired by alcohol at any relevant time. Because the exclusion bars coverage for all loss arising out of improper use of the vehicle, both insureds are equally affected by the exclusion. Thus, although Prior seeks to hold Edward only indirectly liable for her injuries under theories such as negligent entrustment, coverage of Edward is still barred because all of Prior's claims seek recovery of losses arising out of the accident. For these reasons, I conclude that, as a matter of law, the "use" exclusion of the Policy bars coverage for the claims made in the state court lawsuit filed by Prior against the Langs, and Empire is entitled to a declaratory judgment to that effect.

> B.   The Use Exclusion Does Not Violate Connecticut Public Policy

The "influence" exclusion does not form the basis of this decision and, accordingly, whether it violates public policy need not be addressed. The "use" exclusion, which operates to deny insurance coverage for uses that violate the Rental Agreement, including driving under the influence, creates the coverage limitation that defendants argue violates public policy. I conclude that enforcing the exclusion does not violate Connecticut public policy.

The defendants argue that: (1) the exclusion is inconsistent with state law providing for minimum coverage in automobile insurance policies, and (2) although neither the Connecticut

legislature nor its courts have declared alcohol-impairment exclusions to be void as against public policy, I should follow the reasoning of states that have found such exclusions unenforceable and effectively reform the insurance policy to provide coverage for the Langs.  I conclude that enforcing the exclusion is consistent with Connecticut public policy and I decline to reform the contract.

To support their argument that the use exclusion based on alcohol use is contrary to Connecticut public policy, defendants cite Connecticut statutes that authorize regulations to require minimum coverage for automobile liability insurance.  Conn. Gen. Stat. §§ 14-112, 38a-334 to -335 (West 2008); Conn. Reg. § 38a-334-1 to -10 (2000) (the "Regulations").  The Regulations require automobile liability policies to provide minimum coverage and allow only specific exclusions from coverage.  Conn. Reg. § 38a-334-5(a), (c).  Exclusions are permitted for intentionally-caused injury or damages and liability assumed under contract, but not for recklessly-caused injury or injury resulting from impairment by alcohol or drugs.  Conn. Reg. § 38a-334-5(c).  That regulatory limitation on exclusions, if applied to the Supplemental Liability Policy, independently or through the terms of the Rental Agreement, would bar an exclusion for use while alcohol-impaired.

By their own terms, however, the Regulations do not apply to the Empire policy.  The Regulations create the following exceptions:

> These regulations do not apply to the insurance afforded under any policy: (1) to the extent that the insurance afforded exceeds the limits specified in subsection (a) of section 14-112 of the General Statutes *or* (2) if the policy contains an underlying insurance requirement *or* provides for a retained limit of self-insurance equal to or greater than the limits specified in said subsection (a) of section 14-112.

Conn. Reg. § 38a-334-4 (emphasis added).  The Empire policy is exempted from the Regulations under both exceptions:  it provides more than the required minimum coverage and it has an underlying insurance requirement commensurate with the state minimums.  *Id.*

First, the limits specified in Connecticut General Statutes section 14-112 are the ability to satisfy "any claim for damages by reason of personal injury to, or the death of, any one person, of twenty thousand dollars, or by reason of personal injury to, or the death of, more than one person on account of any accident, of at least forty thousand dollars, and for damage to property of at least ten thousand dollars."  Conn. Gen. Stat. § 14-112(a).  The Empire Policy provided one million dollars in coverage, which exceeds the limits specified in the statute.  Accordingly, the Policy is exempted from the Regulations.  Conn. Reg. § 38a-334-4(1).

Second, the Empire Policy contains an underlying insurance requirement that obligates the insured to maintain insurance equal to or greater than the limits specified in the Regulations. That requirement also exempts the entire Policy from the Regulations.  An analogous issue was decided by *Reddy v. New Hampshire Ins. Co.*, 28 Conn. App. 145 (Conn. Ct. App. 1992).  That case turned on whether the insurance policy at issue was a "primary policy, which provides underlying coverage," or "an excess policy with an underlying insurance requirement."  *Id.* at 155.  If the policy was the former, it was an "automobile liability policy" and subject to Connecticut statutory requirements including mandatory uninsured motorist coverage; if it was the latter, it was not subject to those requirements.  *Id.*  Because the policy contained an "underlying insurance requirement, which required exhaustion of the underlying policy's coverage," it was not an "automobile liability policy" but an "excess policy."  *See id.*

Likewise, the Empire Policy is an excess policy, rather than a primary automobile liability

policy, and therefore is exempted from the Regulations.  Conn. Reg. § 38a-334-4(2).  This

interpretation – that Connecticut's minimum coverage requirements and limitations on policy

exclusions apply to underlying automobile liability policies but not to excess policies – is rational

because excess policies serve a different purpose than automobile liability policies.  *See Mass v.*

*U.S. Fid. & Guar. Co.*, 222 Conn. 631, 639-44 (1992) (distinguishing purpose of excess or

umbrella policy from "policies that exclusively cover liability from damages arising out of the

ownership, maintenance or operation of an automobile"); *Curran v. Aetna Cas. & Sur. Co.*, 222

Conn. 657, 664-65 (1992); *Universal Underwriters Ins. Co. v. Paradis*, 50 Conn. Supp. 486,

496-502 (2006) (finding Connecticut's financial responsibility law does not apply to umbrella

coverage that exceeds minimum limits).  The statutory and regulatory provisions cited by the

defendants do not support a conclusion that enforcing the terms of the insurance contract

between Empire and the Langs violates Connecticut public policy.  Thus, no reasonable jury

could find that Empire failed to satisfy its burden of "demonstrating that the loss is excluded

under the express terms of the policy."  *See W. World Ins. Co.*, 922 F.2d at 121.  Accordingly, the

Policy's use exclusion is enforced and a declaratory judgment will issue that Empire has no duty

to defend or indemnify the Langs.

    C.    <u>The Policy is Not an Unenforceable Contract of Adhesion</u>

       Finally, the defendants briefed whether the insurance Policy is an unenforceable contract

of adhesion.  They did not, however, bring a counterclaim against Empire or formally ask me to

reform the contract.  The defendants ask me to apply the doctrine of estoppel to barr Empire from

asserting the exclusions against the defendants.  Their argument is not persuasive.  I conclude

that the terms of this contract do not contravene public policy, are not substantively

unconscionable, and are not otherwise void.

Connecticut recognizes that "[s]tandardized contracts of insurance continue to be prime examples of contracts of adhesion, whose most salient feature is that they are not subject to the normal bargaining process of ordinary contracts." *Aetna Cas. & Sur. Co. v. Murphy*, 206 Conn. 409, 416 (1988); *see also Rumbin v. Utica Mut. Ins. Co.*, 254 Conn. 259, 264 n.6 (2000). When faced with a contract of adhesion, a court may apply the principle of contract law that recognizes that "occurrence of a condition may . . . be excused in order to avoid a 'disproportionate forfeiture.'" *See Aetna*, 206 Conn. at 413.

The only contracts of adhesion the Connecticut Supreme Court has invalidated are contracts that seek "release of liability for future negligence" by a service provider, i.e., exculpatory releases required prior to participation in sporting events. *See, e.g.*, *Brown v. Soh*, 280 Conn. 494 (2006) (car racing and employment context); *Reardon v. Windswept Farm, LLC*, 280 Conn. 153 (2006) (recreational horseback riding); *Hanks v. Powder Ridge Rest. Corp.*, 276 Conn. 314 (2005) (recreational snowtubing). In the context of a rental car contract, the Connecticut Supreme Court side-stepped an analysis of whether the contract was one of adhesion and reached a result for the plaintiff car-renter on statutory grounds, under the Connecticut Unfair Trade Practices Act. *Votto v. Am. Car Rental, Inc.*, 273 Conn. 478, 480 (2005).

Under Connecticut jurisprudence, merely showing that an insurance contract is a contract of adhesion does not lead inextricably to its invalidation – or as sought here, enforcement of all contract terms except the exclusions. Rather, the court must ask whether the disproportionate bargaining power of the parties necessarily results in contractual terms that contravene public policy or are otherwise unconscionable or void.

-14-

In the present case, the Policy was an additional "product" that Edward Lang purchased voluntarily when he entered into the Rental Agreement to protect himself from financial exposure in the event of his own negligence.  The Policy has none of the compulsory or limiting qualities that caused the Connecticut Supreme Court to hold that the exculpatory contracts of adhesion discussed above were contrary to Connecticut's public policy.  Enforcing the Policy exclusion does not work a disproportionate forfeiture against Edward Lang because he paid fair value for exactly what the terms of the policy promised him:  catastrophic supplemental liability protection subject to enumerated exclusions.  A factual investigation into Edward Lang's interactions with the policy salesperson is unnecessary because the contractual terms may be enforced as a matter of law.

Moreover, even if the Langs and Prior were able to show that the Policy or the Rental Agreement was a contract of adhesion, they would not be entitled to the relief they seek.  This is not a case where there has been mere nonoccurrence of a condition precedent.  *See Aetna*, 206 Conn. at 413 ("occurrence of a condition may . . . be excused in order to avoid a 'disproportionate forfeiture.'").  Rather, under Connecticut law, if I were to determine that a contract were a contract of adhesion, the contract would be completely void and no party would be bound by its terms.  I could then enter an order requiring Empire to return to the Langs the cost of the voided policy, i.e., the $8.99 daily premiums Edward Lang paid for coverage under the Policy.  In the absence of a valid claim for contract reformation,[5] I cannot, as the defendants

_____

[5]  In Connecticut, a cause of action for reformation rests on the equitable principle that a written instrument that does not reflect the contracting parties' intent should be rewritten where the instrument is the product of either a mutual mistake or a unilateral mistake by one party coupled with actual or constructive fraud, or other inequitable conduct on the part of the other. *Lopinto v. Haines*, 185 Conn. 527, 531 (1981).

appear to urge, enforce the provisions of the Policy providing coverage and void only the Policy exclusions.

Finally, to the extent the defendants argue that the car rental agency that sold Edward the policy violated Connecticut insurance law or regulations, those legal claims are not before me in this declaratory judgment action. The legal question before me is whether the terms of the Policy between Edward Lang, Samantha Lang, and Empire are enforceable. I conclude that they are.

## IV.   Conclusion

Empire's motion to strike (**doc. # 63**) is **DENIED AS MOOT** because I have not relied on documentary evidence submitted by defendant Stacey Prior after the summary judgment hearing. For the reasons detailed above, Empire's motion for summary judgment (**doc. # 31**) is **GRANTED** and the defendants' cross motions for summary judgment (**docs. ## 52-53**) are **DENIED**. The clerk shall enter judgment for plaintiff and close this case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 15th day of September 2009.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

-16-